UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                    Case Number: 08-16947-7

    KELLY MARIE CASPER,

                  Debtor.

---

    MARK WESTLUND,

                  Plaintiff,

v.                                                                                         Adversary Number: 09-71

    KELLY MARIE CASPER,

                  Defendant.

---

## MEMORANDUM DECISION

The plaintiff, Mark Westlund, filed this adversary proceeding under 11 U.S.C. § 523(a)(2), alleging that his claims against the defendant should be excepted from discharge. On August 16, 2010, the Court conducted a telephonic hearing on the defendant's motion for summary judgment or partial summary judgment. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, and for the reasons indicated below the defendant's motion is granted.

Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The existence of a minor factual dispute or discrepancy

does not render a summary judgment motion deficient; instead, summary judgment is to be denied only if there is a "*genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact is one related to a disputed matter that might affect the outcome of the action. Id. When deciding whether there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003); see also Schuster v. Lucent Techs., Inc., 327 F.3d 569 (7th Cir. 2003). The Court's role is not to resolve factual issues, but to grant summary judgment if there can be "but one reasonable conclusion." Liberty Lobby, 477 U.S. at 250.

The facts are as follows. The parties were, as both appear to concede, real estate speculators. The defendant operated a real estate business called Casper Investments, Inc., and a real estate investment program called "Kelly's Buying Program." She acknowledges in the affidavit filed in support of the summary judgment motion that she had a "substantial amount of experience" handling real estate transactions which involved the short term purchase and resale of various properties (i.e., what is often called real estate "flipping"). The emails exchanged by the parties appear illustrative of her business; for example, in one relevant message (dated October 10, 2006), she wrote:

> I have an opportunity for you! Myself and my associates are purchasing 3 luxury homes in Texas requiring deposits of $5,000 each. We are also purchasing a batch of 6 preconstruction properties that need $2500 each. We would only need the money for about 30-

45 days. And, we would pay back $45,000 in less than 45 days. If it went up to 60 days we would pay back $50,000.00.[1]

Meanwhile, the plaintiff had substantial real estate experience of his own. He purchased a number of properties in Florida for investment purposes during the 1980s and 1990s. Between 2003 and 2005, he also purchased pre-construction town homes in Florida. In his deposition, he testified that he wanted to participate in the real estate market because of "the frenzy of real estate activity that was happening."[2] He acknowledges purchasing properties with the intention to "flip" them.[3] He also participated in real estate transactions in Michigan and Illinois. Apparently, his Florida real estate speculations were premised upon the expectation that real estate prices would continue to escalate by about 10% to 20% per year.[4]

The plaintiff indicated he first heard about Ms. Casper through a Yahoo.com investment group.[5] Another member of the group told the plaintiff that she had an "investment opportunity for short-term profit."[6] In October 2006, the parties started discussing real estate investment possibilities. After he inquired, Ms. Casper

---

[1] See Exhibit no. 3 attached to the Affidavit of Gary L. Dreier filed in opposition to the motion for summary judgment.

[2] See Deposition of Mark Westlund, p. 23, lines 1-5; attached as Exhibit A to the Affidavit of James A. Higgins filed in support of the motion for summary judgment.

[3] See Deposition of Mark Westlund, p. 27, lines 3-7.

[4] See Deposition of Mark Westlund, p. 29, line 18 through p. 20, line 2.

[5] See Deposition of Mark Westlund, p. 43, lines 11-18.

[6] See Deposition of Mark Westlund, p. 43, lines 16-18.

informed him that she and her husband had an excellent credit rating and that she had a number of real estate opportunities available for him to consider. One of those opportunities included a mortgage on a home owned by Ms. Casper's mother, although she apparently did not inform the plaintiff that she herself was responsible for the payments on the home and was not making them. The plaintiff indicates that he invested approximately $83,000.00 with her based on these representations. In addition, Ms. Casper told the plaintiff about another opportunity in Texas involving six "pre-construction" properties.[7] She apparently told him that the properties were already under contract and that a $45,000.00 loan (or investment) would easily be repaid in 45 to 60 days. She proposed to pay him $60,000.00 in 60 days on a $45,000.00 loan and signed a promissory note in December of 2006 memorializing the loan.

According to the plaintiff's affidavit filed in response to the summary judgment motion, Ms. Casper told him that if he gave her the $45,000.00, she would purchase the Texas properties for his benefit.[8] He says that based on that representation, he wired her the money pursuant to her instructions.[9] Instead of purchasing real estate with the money, however, Ms. Casper apparently paid $20,000.00 to her father and used another $20,000.00 toward the purchase of a

---

[7] These were the same properties previously mentioned in the email exchange between the parties. See footnote no. 1, infra.

[8] See Affidavit of Mark Westlund offered in opposition to the motion for summary judgment, at paragraph 2.

[9] See Affidavit of Mark Westlund offered in opposition to the motion for summary judgment at paragraph 3.

4

Mercedes-Benz for her ex-husband. The plaintiff alleges that the remaining $5,000.00 of the original amount he wired to her has not been accounted for. Ms. Casper admits she did not use the transferred funds specifically to purchase real estate in Texas, and that shortly after the wired funds were deposited into her corporate account, $20,000.00 was wired to her father and $20,000.00 was wired as a down payment on the car.[10]

The plaintiff also participated in another transaction with the defendant, this one involving a $65,000.00 unsecured loan reflected by an October 19, 2006, promissory note. Apparently, this transaction was related to the purchase of a house by Ms. Casper's sister, although the plaintiff is vague as to the details.[11] This loan was apparently repaid in full. Based on the plaintiff's response to the motion for summary judgment, his allegations of fraud relate solely to the $45,000.00 transaction which was supposedly designed to assist Ms. Casper in purchasing the properties in Texas. The other transactions – the $83,000.00 transaction involving property in California and the $65,000.00 transaction relating to a house for Ms. Casper's sister – do not appear to be at issue. Consequently, the Court must only consider whether there are any genuine issues of material fact as to the $45,000.00 loan, and whether it would be possible for the plaintiff to prove that the loan was obtained by fraud within the meaning of § 523(a)(2)(A). In that regard, § 523(a)(2)(A) prevents the discharge of debts for money obtained by

---

[10] See Affidavit of Kelly Marie Casper offered in support of the motion for summary judgment at paragraph 8.

[11] See Deposition of Mark Westlund, p. 108, lines 3-24.

"false pretenses, a false representation, or actual fraud." The statute requires proof of false or deceptive conduct, fraudulent intent, and justifiable reliance. Mayer v. Spanel Int'l, 51 F.3d 670, 674 (7th Cir. 1995).

It is a fundamental principle of bankruptcy jurisprudence that exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor. See In re Chambers, 348 F.3d 650, 654 (7th Cir. 2003); In re Scarlata, 979 F.2d 521, 524 (7th Cir. 1992). A plaintiff must prove all elements of the proffered exception to discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991). In order to except a debt from discharge under this section, a creditor is typically required to establish the following elements: (i) the debtor made a false representation of fact, (ii) the debtor either knew the representation was false or made the representation with reckless disregard for its truth, (iii) the representation was made with an intent to deceive, and (iv) the plaintiff justifiably relied upon the false representation. See In re Kimzey, 761 F.2d 421, 423-24 (7th Cir. 1985), abrogated on other grounds by Grogan v. Garner, 111 S. Ct. 654 (1991); Vozella v. Basel-Johnson (In re Basel-Johnson), 366 B.R. 831 (Bankr. N.D. Ill. 2007). In McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000), the court noted that "actual fraud" in the context of the statute is broader than, and need not take the form of, a specific misrepresentation if there is evidence of a fraudulent scheme by which the debtor sought to take advantage of another.

Here, the plaintiff alleges that the defendant provided him with a credit report reflecting that she and her husband had an "excellent" credit rating. He says that

6

she claimed to have experience "flipping" properties for short-term profit.  And finally, he claims she promised him that if he gave her $45,000.00, she would use the money to secure these various Texas properties that were under contract.  In response, the defendant says that after the plaintiff asked her for a credit report, she gave him one.  He has not identified anything misleading about the credit report itself.[12]  She says that she did actually have "substantial" experience in handling these types of transactions, and that he has offered no evidence of any inexperience on her part.  And finally, she seeks to strike the plaintiff's suggestion in his affidavit that there was any representation to him about the Texas properties being purchased for his "benefit," as his deposition testimony reflects that whatever the purpose of the loan, there was never any discussion that he would have an interest, beneficial or otherwise, in the real estate itself.  According to the defendant, the undisputed facts reflect that the plaintiff did not rely upon any representations about what would be done with the proceeds of the $45,000.00 loan.

In the context of a summary judgment motion, the Court's task is to determine whether it would be reasonable for the finder of fact to return a verdict in favor of the non-moving party, and in doing so the Court need not draw every conceivable inference from the record, but only those which are reasonable.  <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).  The question here

---

[12] A statement regarding a debtor's financial condition is not actionable under § 523(a)(2)(A).  Providing a false credit report might be actionable under § 523(a)(2)(B) for the use of a statement in writing that is materially false respecting the debtor's financial condition.  Regardless, the plaintiff has not identified anything "materially false" about the credit report.

is whether there are any reasonable inferences to be drawn from the record which would support a finding that the defendant made any false representations to the plaintiff, or that the plaintiff justifiably relied upon her representations in making the loan.  As to the first issue, the court observed in Basel-Johnson that "where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive."  366 B.R. at 845. It is the plaintiff's responsibility to identify "specific" facts which demonstrate a genuine issue for trial.  Bank Leumi, 928 F.2d at 236.

The plaintiff has not specifically identified any false or misleading statements as to the defendant's credit report or her experience level.  The credit report was not falsified.  Further, the plaintiff's impressions of the defendant's experience level were based at least in part on the representations of an independent third party – namely, the member of the Yahoo.com investment group who initially provided the plaintiff with Ms. Casper's name.  Generalized assertions about fraudulent behavior are insufficient, and the plaintiff does not identify a specific misrepresentation Ms. Casper might have made about her experience with real estate transactions.  Consequently, neither of these allegations constitute genuine issues of material fact.  This leaves only one contention for consideration.  As articulated in the plaintiff's opposition to summary judgment, he alleges that the defendant intentionally misrepresented that the loaned funds were intended for a specific purpose (i.e., deposits on Texas real estate) and that her failure to use the funds for that purpose illustrates her intent to deceive him.  He cites several cases,

including In re Pappas, 661 F.2d 82 (7th Cir. 1981), In re Sheridan, 57 F.3d 627 (7th Cir. 1995), and Mayer v. Spanel Int'l, 51 F.3d 670 (7th Cir. 1995), for support of the proposition that when a creditor lends money to a debtor in reliance upon a representation that the funds will be used for a "specific purpose," fraud may be proven if the debtor had no intention of actually using the money for that purpose.

In Pappas, the debtor had an "extensive credit relationship" with the bank and had established a pattern in which he would present the bank with a commitment for title insurance on property he was developing. In exchange, the bank would prepare a note and mortgage related to a specific lot and deposit the loan proceeds in the debtor's corporate account. However, the debtor never actually purchased or otherwise acquired an interest in the lots in question, nor did he advise the bank that he was using the funds for purposes other than the purchase and development of those lots. The Seventh Circuit affirmed a ruling that the debtor had misrepresented his intentions, and that "where the bankrupt is entrusted with money to be used for a specific purpose, and he has no apparent intention of using the money for that purpose," a debt can properly be held nondischargeable. 661 F.2d at 86.

The Seventh Circuit revisited the "specific purpose" concept in Sheridan, a case in which a bank brought an adversary proceeding to except a debt from discharge, alleging that the debtor obtained loans through the use of false financial statements and false pretenses. The bank had authorized a line of credit for the debtor, a real estate developer, and the parties had agreed that the line of credit would only be used to finance earnest money deposits. After the debtor attempted

9

to make a draw on the credit line to make a payment to another bank, he was told that the line of credit was not intended for that purpose. He subsequently requested money for earnest money deposits on various properties, and the bank approved the requests. At the time of the first withdrawal, the debtor's bank account had a large negative balance, and he did not use the loan proceeds specifically for the purpose of making escrow deposits. The bankruptcy court found that the debtor actually made the escrow payments in question, even though he did not do so with specific funds given to him by the bank. On appeal, the Seventh Circuit stated:

> We have held that when a creditor entrusts the debtor with money to use for a specific purpose and the debtor has no intention of using it in that manner, a misrepresentation exists upon which a debt can be held non-dischargeable. (citation omitted) In other words, proof that the debtor never put the money toward the stated purpose allows a court to infer the requisite intent.

57 F.3d at 635. In affirming the judgment in favor of the debtor, the Seventh Circuit observed that the "important question" was whether the debtor "made use of equivalent amounts of money in the required manner." Id. at 636.

Meanwhile, in Mayer the debtor was guilty of multiple frauds, including the fraudulent representation that he had obtained an advance purchase agreement for a manual that would help schools deal with substance abuse by students, which he used to obtain a loan from the creditor. Unlike the present case, there was no allegation that the funds were to be used for a specific purpose (such as the development of the manual). Instead, the question was whether the creditor reasonably relied upon the debtor's representations (and the forged purchase

10

documents).[13]  The Seventh Circuit rejected the idea that the plaintiff could be held to a "reasonable-investigation" requirement, observing that reliance is an element of fraud but "reliance in fact does not lose its status in law just because the victim is careless."  51 F.3d at 676.  At the same time, however, the court also recognized that to prove fraud, "an intentional falsehood is not always enough."  Id.  As the Seventh Circuit stated succinctly:

> The lie must concern a material fact.  Even a material lie may be disregarded when the victim is not actually taken in.  For example, the victim may know the truth, having been given documents containing full information. (citations omitted)  More generally, an investor cannot close his eyes to a known risk.  If the investor possesses information sufficient to call the representation into question, he cannot claim later that he relied on or was deceived by the lie.  This is not because he has a duty to investigate lies or prevent intentional torts, though; it is, rather, because the false statement is not material under the circumstances.

Id.

Further, while even a careless victim can still sue for fraud, a plaintiff's reliance must be "justifiable" under the circumstances.  Justifiable reliance is a minimal, subjective standard that encompasses "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."  Field v. Mans, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995); Bletnitsky v. Jairath (In re Jairath), 259 B.R. 308 (Bankr. N.D. Ill. 2001).  While

---

[13] The holding in Mayer has been abrogated to the extent it could be held to require a showing of "reasonable" rather than "justifiable" reliance under § 523(a)(2)(A).  See Field v. Mans, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995).  Otherwise, however, the decision remains instructive and binding authority.

11

justifiable reliance does not obligate a creditor to investigate everything a debtor says, the creditor may not "blindly" rely upon a misrepresentation which could have been proven false through a "cursory examination or investigation." Field, 516 U.S. at 71.

As a preliminary matter, the Court finds nothing in the record which supports the contention that the $45,000.00 loan was designed to purchase real estate for the "benefit" of the plaintiff. No specific properties were ever identified, nor were any documents, such as title reports, mortgages, or sales contracts, ever requested by the plaintiff. Nothing indicated that he was promised an interest, beneficial or otherwise, in the Texas real property, and the loan documents themselves are silent as to the purpose of the loan. The email exchanges offered in opposition to the motion for summary judgment illustrate that Ms. Casper offered an investment opportunity and promised the plaintiff a significant short-term return on his money. The loan documents also reflect this understanding, as the note demonstrates that the plaintiff was lending Ms. Casper $45,000.00 while she would repay him $60,000.00 in 60 days.[14] She did not promise to purchase property for his benefit. At most, the only reasonable inference to be drawn from the record that could support the plaintiff's case is that Ms. Casper told the plaintiff that the proceeds of the $45,000.00 loan were going to help her secure the properties.[15]

---

[14] This works out to about a 1/3 return on his investment in two months, or an annual interest rate of well over 200%.

[15] Ms. Casper denies that the loan proceeds were supposed to be utilized in any particular manner, but for purposes of summary judgment the Court will construe the facts in the light most favorable to the plaintiff.

Under Pappas and Sheridan it might be possible for there to be an issue of fact on this point, as the plaintiff contends he loaned Ms. Casper the money for this specific purpose and that she failed to use even an equivalent amount of money for the stated goal.  However, the question is not whether there is an issue of fact, but whether the disputed issue is material to the outcome.  In this case, assuming that the plaintiff's allegations about the Texas properties are true, the Court must determine whether these alleged false statements were material under the circumstances.  Mayer, 51 F.3d at 676.

The defendant argues that they were not.  She points out that unlike the situations in Pappas or Sheridan, the plaintiff was not given any documents referencing specific properties.  She did not offer him title reports, copies of purchase contracts, or any other identifiable information about the Texas properties.  She also notes that the loan documents were drafted by the plaintiff, who indicated in his email that he didn't like lawyers.[16] The promissory note is silent as to the use of the loan proceeds, and does not reference a "specific purpose."  In fact, the promissory note contains an integration clause which provides that the document sets forth the "entire agreement and understanding between the parties" and "supersedes all prior discussions, agreements and understandings of every kind and nature between them."[17]  In his deposition

---

[16] See Exhibit no. 3 to the Deposition of Kelly Marie Casper attached to the Affidavit of Gary L. Dreier in opposition to the motion for summary judgment.

[17] See Exhibit A attached to the Affidavit of Kelly Marie Casper in support of the motion for summary judgment at paragraph 3.9.

testimony, the plaintiff acknowledged that some of his other deals (such as his loans to an Illinois developer of high-end homes in Chicago) were simply unsecured loans to the developer, and that when he wanted additional security he became a member of the limited liability company that held title to the real estate.[18] In this transaction, he simply wired the money to the defendant without any limitation on its use. The defendant believes all of this clearly indicates that the plaintiff understood that he was making a general unsecured loan and that the money could be used for other purposes.

Notably, the email exchange between the parties did not contain a specific representation that these individual funds would be set aside and only used in connection with the deposits on specific properties. Nor was there a clear contractual provision which restricted the defendant's use of the money. See In re Nordstrom, No. 02-82350/Adv. 02-8167, 2004 WL 51284, at *3 (Bankr. C.D. Ill. Jan. 7, 2004) (absent a representation that funds would be segregated, a monetary transfer to a debtor transferred ownership of the money, permitting unrestricted use of the funds). Certainly this is not a situation in which a debtor represented that a loan would be secured, rather than unsecured, which is arguably a material fact. See Cent. Credit Union v. Logan (In re Logan), 327 B.R. 907, 913 (Bankr. N.D. Ill. 2005). As one court stated, "Any lender making an unsecured loan does so with the knowledge that the funds might easily be used for

---

[18] See Deposition of Mark Westlund, p. 40, line 1 through p. 41, line 7, and p. 41, line 24 through p. 43, line 6); attached as Exhibit A to the Affidavit of James A. Higgins filed in support of the motion for summary judgment.

other than the stated purpose." In re Nantz, 44 B.R. 543, 546 (Bankr. N.D. Ill. 1984); see also Columbiana County Sch. Employees Credit Union, Inc. v. Cook (In re Cook), 342 B.R. 384 (Table), No. 05-8034, 2006 WL 908600, at *5 (B.A.P. 6th Cir. 2006).

The plaintiff lost money in what can charitably be described as a speculative venture. The defendant herself appears to have been involved in real estate speculation and the promotion of get-rich-quick schemes that promised large returns in short periods of time. They were bit players in a larger economic debacle and both appear to have been seduced by the speculative frenzy of flipping real estate for short-term profit and the impossible allure of ever-escalating real estate values. That said, the plaintiff's participation in speculative ventures does not mean that he could not have been defrauded, or that evidence should be construed against him. In the context of a motion for summary judgment, the plaintiff is entitled to the benefit of all reasonable inferences that might be drawn from the record. Heft, 351 F.3d at 282.

It is also true that the fresh start offered by the bankruptcy code is limited to the "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). However, the fact that the defendant promoted the "flipping" of real estate does not itself justify a finding of fraud. Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor. Chambers, 348 F. 3d at 654. An action based on fraud contemplates reliance upon a material misrepresentation or omission. Mayer, 51 F.3d at 676 (7th Cir.1995) ("Reliance means the conjunction of a material

15

misrepresentation with causation in fact."); see also Bombardier Capital, Inc. v. Dobek (In re Dobek), 278 B.R. 496, 505 (Bankr. N.D. Ill. 2002); Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002).  The only reasonable conclusion to draw from the facts is that the plaintiff did not justifiably rely upon a material misrepresentation regarding the Texas properties.  His personal background and experience, together with the specific circumstances of the transaction, illustrate to the contrary.  The specific use of the funds was irrelevant; the plaintiff was far more interested in the timing of his proffered return on his investment.  Put simply, the plaintiff has not demonstrated there is a genuine issue of material fact as to whether the defendant *obtained* money by false pretenses, a false representation, or actual fraud.  Lazzaro v. Weichman (In re Weichman), 422 B.R. 143, 154 (Bankr. N.D. Ind. 2010).  Accordingly, the defendant's motion for summary judgment should be granted and the complaint dismissed.

    Dated:  November 2, 2010

                                          BY THE COURT:

                                          /s/ Thomas S. Utschig
                                          Hon. Thomas S. Utschig
                                          U.S. Bankruptcy Judge